1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RODNEY ROUZAN, | ) Case No. EDCV 12-1361-BRO (JPR) |
|          Plaintiff, | ) |
|        vs. | ) REPORT AND RECOMMENDATION OF<br>) U.S. MAGISTRATE JUDGE |
| LORENA DORTA et al., | ) |
|          Defendants. | ) |

This Report and Recommendation is submitted to the Honorable Beverly Reid O'Connell, U.S. District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the U.S. District Court for the Central District of California.

**PROCEEDINGS**

This action under 42 U.S.C. § 1983 arises from the detention of Plaintiff Rodney Rouzan and the seizure and search of his cellphone by San Bernardino County sheriff's deputies.

On November 15, 2012, Plaintiff filed a First Amended Complaint ("FAC") against Deputies Lorena Dorta, Keith Oliva, Robert Johnston, Robert Boyd, and Rick Swigart, naming them in

1

their individual and official capacities.[1]  Plaintiff alleged that Defendants Dorta and Boyd unlawfully detained him and Defendants Dorta, Oliva, and Johnston unlawfully seized his cellphone and, with other Defendants, searched it, all in violation of his rights under the First, Fourth, Fifth, and 14th amendments; he also asserted claims for negligence and intentional wrongdoing as to the supervisory officers, Boyd and Swigart.  On December 13, 2012, Defendants moved to dismiss the FAC.  On February 12, 2013, the previously assigned U.S. Magistrate Judge issued a Report and Recommendation, finding that Defendants' motion should be granted only as to Plaintiff's fifth and sixth causes of action, against Swigart and Boyd based upon supervisory liability.  On March 21, 2013, the previously assigned U.S. District Judge entered an order accepting the Report and Recommendation.  On March 29, 2013, this action was transferred to this Court.  On April 19, 2013, the remaining Defendants answered the FAC.

On November 11, 2013, the parties stipulated to the dismissal of Johnston and Oliva.[2]  On November 22, 2013, the parties filed cross-motions for summary judgment.  On November

---

[1]    Although Plaintiff also named the County of San Bernardino, the previously assigned U.S. Magistrate Judge dismissed the County as a defendant the same day he ordered the FAC filed.

[2]    Defendants contend that Swigart was dismissed in the order granting in part their motion to dismiss.  (Defs.' Opp'n Br. at 1.)  In fact, Plaintiff's fourth cause of action, claiming a Fourth Amendment violation in the search of his cellphone by Defendants apparently including Swigart, has not been dismissed. (See Dkt. 33; FAC ¶ 21.)  Plaintiff, however, now appears to contend that only Deputies Dorta and Boyd searched his phone. (See Nov. 22, 2013 Rouzan Decl. Ex. D ¶ 5.1.)

2

1  27, 2013, the Court advised Plaintiff of his obligations under
2  Federal Rule of Civil Procedure 56 and Local Rule 56.  The
3  parties timely filed opposition and reply papers.  For the
4  reasons discussed below, the Court recommends that Plaintiff's
5  motion be denied and Defendants' motion be granted.

6                    SUMMARY JUDGMENT STANDARDS

7       The Court must grant summary judgment if the papers "show
8  that there is no genuine issue as to any material fact and that
9  the movant is entitled to judgment as a matter of law."  Fed. R.
10 Civ. P. 56(a).  An issue is "genuine" only if a sufficient
11 evidentiary basis exists upon which a reasonable jury could find
12 for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477
13 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).
14 A factual dispute is "material" only if it might affect the
15 outcome of the suit under governing law.  Id. at 248.

16      The moving party bears the initial responsibility of
17 presenting the basis of its motion and identifying those portions
18 of the record, together with affidavits, that it believes
19 demonstrate the absence of a genuine issue of material fact.
20 Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548,
21 2553, 91 L. Ed. 2d 265 (1986).  Once the moving party meets its
22 initial burden, the burden shifts to the opposing party to
23 demonstrate the existence of a genuine issue of material fact
24 with specific facts, not mere conclusory allegations.  Anderson,
25 477 U.S. at 247-48; see Taylor v. List, 880 F.2d 1040, 1045 (9th
26 Cir. 1989).  The opposing party "must do more than simply show
27 that there is some metaphysical doubt as to the material facts."
28 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

                              3

586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); see
Anderson, 477 U.S. at 249 (noting that "in the face of the
defendant's properly supported motion for summary judgment, the
plaintiff could not rest on his allegations . . . to get to a
jury without any significant probative evidence tending to
support the complaint" (internal quotation marks omitted)).
Thus, summary judgment is appropriate if the nonmoving party
"fails to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that
party will bear the burden of proof at trial." Celotex, 477 U.S.
at 322.

In resolving cross-motions for summary judgment, the Court
must consider each party's evidence. Johnson v. Poway Unified
Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). The Court's
function is not to weigh the evidence or determine the truth of
the matter but rather, after drawing all inferences in the light
most favorable to the nonmoving party, to evaluate whether any
genuine issue remains to be tried. See Anderson, 477 U.S. at
249; Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999)
(en banc). The Court may but is not required to consider other
materials in the record not cited to by the parties. Fed. R.
Civ. P. 56(c)(3).

### REQUESTS FOR JUDICIAL NOTICE, EVIDENTIARY OBJECTIONS, AND DISPUTES AS TO STATEMENTS OF FACT

The Court grants Plaintiff's requests for judicial notice,
which are unopposed. See Fed. R. Evid. 201. The Court further
takes judicial notice of the signs that were posted in the San
Bernardino County courthouse at the time of the events alleged in

4

1  the FAC and of the standing order of the Presiding Judge then in
2  effect, none of which is disputed. (<u>See</u> Defs.' Mot. Br. Exs. A,
3  B); Fed. R. Evid. 201.

4      Although Plaintiff disputes and objects to most of
5  Defendants' Statements of Undisputed Material Fact, they are
6  largely consistent with his own.  To the extent Plaintiff objects
7  to Defendants' statements because he was in the hallway at the
8  relevant time and was not a member of the media, those facts are
9  not disputed.  The Court agrees with Plaintiff that Defendants
10 have failed to establish as a matter of law or fact that he was
11 recording "proceedings." (<u>See</u> <u>infra</u> Section I.A.1.)  Because as
12 discussed below Deputy Dorta had probable cause to believe
13 Plaintiff had committed a misdemeanor (<u>id.</u>), whether he was
14 detained or arrested by her before Deputy Boyd's order is
15 immaterial.  Defendants' statement that Plaintiff's phone was
16 searched pursuant to a warrant – which the parties do not dispute
17 was obtained weeks after Plaintiff's arrest (<u>see</u> Defs.' Mot. Br.
18 Ex. I) – is immaterial because the Court finds that regardless of
19 when it was searched, the deputies have qualified immunity for
20 any constitutional violation (<u>see</u> <u>infra</u> Section I.B.2).

21     Defendants object to cellphone videos submitted by Plaintiff
22 as lacking foundation and providing an incomplete depiction of
23 the events at issue.  Given that the parties do not dispute that
24 Deputy Dorta seized Plaintiff's cellphone when he was filming in
25 the courthouse hallway, the contents of the videos are
26 immaterial.

27     Defendants' objections to Plaintiff's November 22, 2013
28 Declaration track their objections to his Statements of

Uncontroverted Fact.  Defendants object to statements 6, 7, 11, 12, 13, 20, 35, 37, and 39, none of which are material.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248.  The propriety of Plaintiff's arrest and cellphone seizure does not turn on whether Plaintiff knew the individuals being videorecorded, the nature of their interaction with sheriff's deputies, the issuance of a verbal warning to Plaintiff, or which deputies were involved in his detention and arrest.  With respect to statement 9, Defendants have not established that the interaction recorded by Plaintiff constituted a "proceeding" under Rule 1.150 (<u>see</u> <u>infra</u> Section I.A.1).  As to Defendants' objection to statement 22, because the Court finds that Deputy Dorta had probable cause to arrest Plaintiff (<u>id.</u>), his contention that she lacked reasonable suspicion is also immaterial.  For purposes of this motion, the Court construes Plaintiff's statement 26, that Defendants lacked a warrant to search his cellphone, to refer to the day of his arrest and to be undisputed.

### SUMMARY OF MATERIAL FACTS

Except to the extent noted, the parties do not dispute the following material facts.  When material facts are disputed, the Court has adopted Plaintiff's version, as long as it is based on some actual evidence.  <u>See In re Coordinated Pretrial Proceedings</u> <u>in Petroleum Prods. Antitrust Litig.</u>, 906 F.2d 432, 441 (9th Cir. 1990) (noting that at summary judgment stage, court not required to adopt unreasonable inferences from circumstantial evidence); <u>see also</u> <u>United States v. $133,420.00 in U.S. Currency</u>, 672 F.3d 629, 638 (9th Cir. 2012) (conclusory evidentiary statements unsupported by factual data do not create triable issue of fact

allowing party to survive summary judgment); <u>FTC v. Publ'g</u>
<u>Clearing House, Inc.</u>, 104 F.3d 1168, 1171 (9th Cir. 1997).

    On June 18, 2012, at about 10 a.m., Plaintiff was standing
in the fourth-floor hallway of the San Bernardino County Superior
Court in Rancho Cucamonga and used his cellphone to videorecord
an interaction between Deputies Oliva and Dorta and two
civilians.  (Nov. 22, 2013 Rouzan Decl. Ex. D ¶¶ 3.1-3.2, 3.6;
Rouzan Dep. at 33; Dorta Dep. at 39, 42.)  Posted signs stated
that "[p]rivate parties who wish to . . . record . . . any
portion of a court proceeding or of person(s) involved with the
judicial process, must inform court security staff of their
intention and seek prior judicial approval" (Defs.' Mot. Br. Ex.
A at 1) and that "cell phones with cameras . . . cannot be used
to . . . record . . . in the court without prior court approval"
(<u>id.</u> at 2).  (<u>See also</u> Boyd Decl. ¶ 1.)[3]  The signs warned that
"[i]ntentional violations may result in removal from the
courthouse or criminal penalty under section 166 of the
California Penal Code" (Defs.' Mot. Br. Ex. A at 1) and that
"[u]se of a cell phone camera or any other device that can record
. . . without prior court approval may subject the user to
confiscation of the item misused, a citation for contempt or an
order imposing monetary sanctions" (<u>id.</u> at 2).  Further, a
January 21, 2011 order of the Presiding Judge established a court
policy that "cell phones with cameras . . . cannot be used to
. . . record . . . in the court without prior approval" and that
such use "without prior court approval may subject the user to

_____

    [3]   Plaintiff does not dispute the existence of the signage
but claims it is irrelevant.  (Pl.'s Obj'ns to Defs.' Evid. at 4.)

7

confiscation of the item misused, a citation for contempt or an order imposing monetary sanctions as provided by California Rules of Court, Rule 1.150." (Defs.' Mot. Br. Ex. B.)

It is undisputed that Plaintiff did not seek judicial authorization to record in the courthouse. (See Pl.'s Obj'ns to Evid. at 4 (contending only that his failure to seek judicial authorization (Defs.' statement of fact 17) was irrelevant).)

Defendants contend that the interaction captured by Plaintiff on his cellphone, which he describes as "deputy sheriffs . . . conversing with two men in the hallway" (Nov. 22, 2013 Rouzan Decl. Ex. D ¶ 3.6), involved individuals refusing to leave the "pretrial" room on the courthouse's fourth floor. (Dorta Dep. at 37-38; Oliva Dep. at 52-55; Boyd Dep. at 62.) Deputy Dorta, witnessing Plaintiff recording the scene, confiscated his cellphone. (Nov. 22, 2013 Rouzan Decl. Ex. D ¶ 3.8; Rouzan Dep. at 33; Dorta Dep. at 43-44, 77, 113-14.)

Deputies Dorta and Johnston ordered Rouzan to accompany them to the sheriff's office on the courthouse's third floor. (Nov. 22, 2013 Rouzan Decl. Ex. D ¶ 4.1; Dorta Dep. at 80; Boyd Dep. at 14-15, 39, 64.) Once there, Plaintiff was told by Deputy Dorta that he was not free to leave (Nov. 22, 2013 Rouzan Decl. Ex. D ¶ 4.2; Dorta Dep. at 85), and he was handcuffed shortly thereafter (Dorta Dep. at 92-93). Defendants contend that Sergeant Boyd issued orders that Plaintiff be detained and, following his removal to the sheriff's office, arrested. (Boyd Dep. at 23, 53; Dorta Dep. at 45-46.)

Plaintiff asserts that while detained "in the county office I observed defendants Dorta and Boyd searching through my phone"

8

without consent or a warrant.  (Nov. 22, 2013 Rouzan Decl. Ex. D

¶¶ 5.1-5.3.)  Defendants deny they searched the phone that day

but state that they later did so pursuant to a warrant obtained

July 13, 2012.  (Defs.' Mot. Br. Ex. I; Oliva Dep. at 56-57; see

also Dorta Dep. at 121 (testifying that "I didn't go through your

phone, that day"); Boyd Dep. at 66 (testifying, "I don't believe

the phone was searched that day"); but see Boyd Dep. at 66

(testifying that deputies might have navigated through

Plaintiff's phone that day and that such a search would have been

consistent with policy).)  Deputy Dorta issued Plaintiff a

citation for violating California Penal Code section 166(a)(1),

contempt of court.  (Nov. 22, 2013 Rouzan Decl. Ex. J.)

**DISCUSSION**

**I.   <u>Fourth Amendment Claims</u>**

Plaintiff asserts Fourth Amendment violations stemming from

his detention and "shackl[ing]" and the seizure and search of his

cellphone.  (<u>See</u> FAC at 6.)

A.   <u>Detention and Shackling of Plaintiff</u>

Plaintiff contends that Defendants Dorta and Boyd "shackled"

him without a warrant, violating his rights under the Fourth

Amendment.  (<u>See</u> Pl.'s Mot. Br. at 4.)  Dorta and Boyd contend

that they had probable cause to believe that Plaintiff had

committed a crime and, in the alternative, that they are entitled

to qualified immunity.  (Answer at 2; Defs.' Mot. Br. at 4-5.)

1              *1.   Defendants Dorta and Boyd Had Probable Cause to*
2                   *Detain and Arrest Plaintiff*[4]

3        The Fourth Amendment "guarantees citizens the right to be
4   secure in their persons against unreasonable seizures." <u>Graham</u>
5   <u>v. Connor</u>, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed.
6   2d 443 (1989) (internal quotation marks and alteration omitted).
7   Accordingly, police may "seize" a citizen for a brief
8   investigatory stop only if they have "reasonable suspicion" of
9   criminal activity, <u>Morgan v. Woessner</u>, 997 F.2d 1244, 1252 (9th
10  Cir. 1993) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 20-22, 88 S. Ct.
11  1868, 1879-80, 20 L. Ed. 2d 889 (1968)), and may arrest a citizen
12  only if they have probable cause to believe he committed a crime,
13  <u>id.</u> (citing <u>Adams v. Williams</u>, 407 U.S. 143, 148-49, 92 S. Ct.
14  1921, 1924, 32 L. Ed. 2d 612 (1972)).

15       "Probable cause exists where the facts and circumstances
16  within . . . the officers' knowledge and of which they had
17  reasonably trustworthy information are sufficient in themselves
18  to warrant a man of reasonable caution in the belief that an
19  offense has been or is being committed . . . ." <u>Dunaway v. New</u>
20  <u>York</u>, 442 U.S. 200, 208 n.9, 99 S. Ct. 2248, 2254 n.9, 60 L. Ed.
21  2d 824 (1979) (internal quotation marks and alterations omitted).
22  Probable cause is an objective standard, <u>John v. City of El</u>
23  <u>Monte</u>, 515 F.3d 936, 940 (9th Cir. 2008) (as amended), and the
24  determination of whether probable cause existed is based only on
25  the information known to the officers at the time of making the
26

27       [4]   Although in his summary judgment submissions Plaintiff
28  frames this as a claim for false arrest (<u>see</u> Pl.'s Obj'ns to Defs.'
    Evid. at 3), he stated no such claim in the FAC (<u>see</u> FAC at 6).

arrest, <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152, 125 S. Ct. 588,
593, 160 L. Ed. 2d 537 (2004).

     As noted by the previously assigned U.S. Magistrate Judge in
his February 12, 2013 Report and Recommendation, the existence of
probable cause turns on whether Plaintiff's videorecording in the
hallway of the courthouse violated Penal Code section 166.[5]
Defendants contend that Plaintiff's recording violated Rule 1.150
of the California Rules of Court, which restricts the
photography, recording, and broadcasting of "court proceedings"
to "ensure[] the fair and equal administration of justice."  Cal.
R. Ct. 1.150(a), (c).  The rule defines "recording" to include
"the use of any analog or digital device to aurally or visually
preserve court proceedings" (Cal. R. Ct. 1.150(b)(6)) and states
that "[e]xcept as provided in this rule, court proceedings may
not be photographed, recorded, or broadcast" (Cal. R. Ct.
1.150(c)).

     Although "court" is broadly defined to include "the
courtroom at issue, the courthouse, and its entrances and exits"

---

[5]     Section 166 provides in relevant part as follows:

[A] person guilty of any of the following contempts of court
is guilty of a misdemeanor:
(1) Disorderly, contemptuous, or insolent behavior committed
during the sitting of a court of justice, in the immediate
view and presence of the court, and directly tending to
interrupt its proceedings or to impair the respect due to its
authority. . . .
(4) Willful disobedience of the terms as written of any
process or court order or out-of-state court order, lawfully
issued by a court, including orders pending trial.
(5) Resistance willfully offered by any person to the lawful
order or process of a court.

Cal. Penal Code § 166(a).

(Cal. R. Ct. 1.150(b)(3)), "proceedings" is not defined.  The
language of the rule, however, reinforces the common
understanding of "proceedings" as formal activities conducted by
judges or other judiciary officials in connection with the
adjudication of legal matters.  <u>See, e.g.</u>, Cal. R. Ct. 1.150(a)
("The judiciary adjudicates controversies, both civil and
criminal, in accordance with established legal procedures in the
calmness and solemnity of the courtroom."); <u>id.</u> ("Photographing,
recording, and broadcasting of courtroom proceedings may be
permitted as circumscribed in this rule if executed in a manner
that ensures that the fairness and dignity of the proceedings are
not adversely affected.").  The paragraph addressing "personal
recording devices" such as cellphones provides for the judicially
authorized use of such devices solely to record the proceedings
in a courtroom:

> The judge may permit inconspicuous personal recording
> devices to be used by persons in a courtroom to make
> sound recordings as personal notes of the proceedings.
> A person proposing to use a recording device must obtain
> advance permission from the judge. The recordings must
> not be used for any purpose other than as personal notes.

Cal. R. Ct. 1.150(d).[6]

The previously assigned U.S. Magistrate found it unclear
whether the rule applied to Plaintiff's videorecording of "court
officials moving two people through the hallway outside of the

---

[6]    Plaintiff's contention that Rule 1.150 applies only to
the media (Pl.'s Mot. Br. at 6) is belied by its explicit treatment
of recordings used only as "personal notes" (Cal. R. Ct. 1.150(d)).

1  courtrooms."  Nor have Defendants proffered any evidence on

2  summary judgment to establish as a matter of law their contention

3  that the interaction recorded by Plaintiff "was a proceeding

4  because the involved parties were being removed from the pretrial

5  room."  (Defs.' Mot. Br. at 7; see also Defs.' Reply Br. at 7-8

6  ("The disturbance was a proceeding which made its way into the

7  hallway.").)  Rather, that Defendants were called to remove the

8  offending parties from the pretrial room and into the hallway

9  suggests the opposite – that they were, once in the hallway, no

10  longer part of a proceeding.  Arguably, then, Rule 1.150 did not

11  give Defendants reasonable suspicion to detain Plaintiff.

12      Defendants further contend, however, that the January 21,

13  2011 policy approved by the Presiding Judge and embodied in

14  signage in the courthouse shows that, regardless of whether the

15  hallway interaction constituted a "proceeding," Plaintiff's

16  recording was barred by virtue of its being done inside the

17  courthouse.  (Defs.' Mot. Br. at 6.)  Thus, Defendants argue,

18  Plaintiff's recording constituted "[w]illful disobedience of the

19  terms as written of [a] process or court order . . . lawfully

20  issued by a court."  Cal. Penal Code § 166(a)(4).  The "Policy

21  re: Cell phones with Cameras, Cameras, and other devices"

22  provided as follows:

23      Pursuant to California Rules of Court, Rule 1.150, cell

24      phones with cameras, cameras and other devices of any

25      kind that can be used to record, photograph or broadcast

26      images and/or sound are permitted in court without prior

27      court approval, but they cannot be used to photograph,

28      record or broadcast images in the court without prior

13

1    court approval.

2    (Defs.' Mot. Br. Ex. B.)  The policy explicitly provided for

3    punishment of violators by "confiscation of the item misused, a

4    citation for contempt or an order imposing monetary sanctions."

5    (Id.)  The language of the policy was incorporated in signs

6    posted in the courthouse (see Defs.' Mot. Br. Ex. A at 2) and was

7    and remains posted on the court website (see Cell Phone Policy,

8    Super. Ct. of Cal., Cnty. of San Bernardino, available at

9    http://www.sb-court.org/GeneralInfo/CellPhonePolicy.aspx (last

10   visited Feb. 27, 2014)).  Other courthouse signage clarified that

11   prior approval was required to record not only "a court

12   proceeding" but also "person(s) involved with the judicial

13   process" (see Defs.' Mot. Br. Ex. A at 1), which would appear to

14   include the people videorecorded.

15        Thus, even if Rule 1.150 itself did not proscribe

16   Plaintiff's actions, the broad language of the court's cellphone

17   policy, forbidding recording "in the court," prohibited recording

18   in any space within the building.[7]  Moreover, like Rule 1.150,

19   the policy was enforceable under section 166 as a standing order

20   of the Presiding Judge.  See Cal. Penal Code § 166(a)(4) (noting

21   "[w]illful disobedience of . . . court order" to be misdemeanor),

22   (5) (noting "[r]esistance willfully offered . . . to the lawful

23

24        [7]    Indeed, insofar as the court's policy precluded the
25   unauthorized use of personal electronic devices for recording
     anywhere in the courthouse, it was consistent with the policies of
26   many courts, including those in this district and the Ninth
     Circuit.  See Local Rule 83-6; Electronic Devices Policy, U.S. Ct.
27   of Appeals for the Ninth Circuit, available at http://cdn.ca9.
     uscourts.gov/datastore/general/2013/01/22/electronic_devices_2010
28   .pdf (last updated June 23, 2010).

order or process of a court" to be misdemeanor).[8]

The policy's language supports Defendants' contention that they reasonably believed Plaintiff had committed a misdemeanor by recording within the courthouse. Deputy Dorta testified that she suspected Plaintiff was recording using his cellphone because he was "holding up . . . a cell phone . . . towards the pretrial room" and Deputy Oliva, he held the phone up to his eye and held it still, and a light on the phone indicated to her that it was being used to record. (Dorta Dep. at 40-47.) Plaintiff does not dispute that he was doing precisely that. (See Nov. 22, 2013 Rouzan Decl. Ex. D ¶ 3.2.) The fact that Deputy Dorta initially detained Plaintiff rather than arresting him does not change that based upon the information available to her at the time, she had probable cause to arrest him. See Virginia v. Moore, 553 U.S. 164, 171, 128 S. Ct. 1598, 1604, 170 L. Ed. 2d 559 (2008) ("In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, . . . . [t]he arrest is constitutionally

_____

[8]     That Defendants cited Plaintiff under section 166(a)(1), which addresses "[d]isorderly, contemptuous, or insolent behavior committed during the sitting of a court of justice, in the immediate view and presence of the court," and thus does not apply to Plaintiff's conduct, does not change that Deputy Dorta, witnessing his behavior, reasonably believed him to be acting in violation of court rules. Cf. United States v. Wallace, 213 F.3d 1216, 1220 (9th Cir. 2000) (upholding finding of probable cause when officer's observations correctly caused him to believe that individual had violated California window-tinting law but officer "was just wrong about exactly why"); United States v. Moore, 357 F. App'x 14, 15 (9th Cir. 2009) ("Even if the officers were mistaken about the precise requirements of California law, the officers made the stop based on certain objective factors unrelated to any alleged misunderstanding of law.").

1  reasonable."). Her observations that formed the basis for
2  probable cause were imputed to her colleagues. See Garcia v.
3  Cnty. of Merced, 639 F.3d 1206, 1211 (9th Cir. 2011) (noting that
4  probable cause can be based on collective knowledge of law
5  enforcement personnel); (see Dorta Dep. at 92-93 (testifying
6  that, based on observations she reported to him, Deputy Boyd
7  instructed her to arrest Plaintiff)).

8      To the extent Plaintiff asserts that his "shackl[ing]" by
9  Deputy Dorta itself violated the Constitution (see FAC at 6), he
10 has failed even to state a claim for relief. Plaintiff neither
11 claims nor submits evidence of excessive force in connection with
12 the use of handcuffs. Simply placing someone in handcuffs in
13 connection with an arrest (see FAC ¶¶ 19-25 (alleging that he was
14 handcuffed about 20 minutes after being brought to sheriff's
15 office); Dorta Dep. at 92-93 (testifying that she handcuffed
16 Plaintiff once directed by Boyd to arrest him)), does not by
17 itself violate the Fourth Amendment. See Graham, 490 U.S. at 396
18 ("Our Fourth Amendment jurisprudence has long recognized that the
19 right to make an arrest or investigatory stop necessarily carries
20 with it the right to use some degree of physical coercion or
21 threat thereof to effect it."); cf. Atwater v. City of Lago
22 Vista, 532 U.S. 318, 354-55, 121 S. Ct. 1536, 1558, 149 L. Ed. 2d
23 549 (2001) (holding that motorist's Fourth Amendment rights not
24 violated when she was arrested, handcuffed, and transported to
25 jail for failing to fasten her children in seat belts).

2.   *Defendants Are Entitled to Qualified Immunity For*
*Their Detention of Plaintiff*

Even if Defendants misinterpreted the court's policy and thus lacked probable cause, <u>see, e.g.</u>, <u>United States v. Lopez-Soto</u>, 205 F.3d 1101, 1105 (9th Cir. 2000) (no reasonable suspicion based on mistake of law), they are still entitled to qualified immunity.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).  Qualified immunity applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  <u>Id.</u> (internal quotation marks omitted).

In addressing qualified immunity, a court must determine (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendants' conduct violated a constitutional right, and (2) whether that right was "clearly established."  <u>Cmty. House, Inc. v. City of Boise</u>, 623 F.3d 945, 967 (9th Cir. 2010) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001), <u>overruled in part by Pearson</u>, 555 U.S. 223).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed

first in light of the circumstances in the particular case at hand." Id. (internal quotation marks omitted); see also Pearson, 555 U.S. at 236.

Unless the facts show both a constitutional violation and that the right violated was clearly established, Defendants are entitled to qualified immunity. Cmty. House, 623 F.3d at 967. The dispositive inquiry with the second prong is whether it would be clear to a reasonable official that her conduct was unlawful in the specific situation presented. Saucier, 533 U.S. at 202. This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991) (internal quotation marks omitted).

Defendants Dorta and Boyd detained, arrested, and cited Plaintiff in their reasonable belief that his actions violated a posted court rule and policy and thus constituted criminal contempt under Penal Code section 166. Their interpretation of Rule 1.150 was not unreasonable; the rule is, at worst, ambiguous, and Plaintiff cites to no case (and the Court is aware of none) showing that "court proceedings" as used in Rule 1.150 do not include hallway incidents. Indeed, one can imagine that the rule was reasonably designed to prevent, for instance, the photographing or recording of jurors walking in the hallway. Similarly, even if Dorta and Boyd's interpretation of the court's cellphone policy was wrong, they reasonably believed that Plaintiff had committed a misdemeanor in Deputy Dorta's presence given the policy's categorical prohibition of "court"

18

photographing or recording, and no clearly established law counseled otherwise.  <u>See</u> <u>Pearson</u>, 555 U.S. at 231; <u>Rosenbaum v. Washoe Cnty.</u>, 663 F.3d 1071, 1078 (9th Cir. 2011) ("Even if the arrest was made without a warrant and without probable cause, however, the officer may still be immune from suit if it was objectively reasonable for him <u>to believe</u> that he had probable cause." (emphasis in original) (citing <u>Ramirez v. City of Buena Park</u>, 560 F.3d 1012, 1024 (9th Cir. 2009))).  Thus, Plaintiff's claims based on Deputies Boyd's and Dorta's detention of him must fail.

> B.   <u>Seizure and Search of Plaintiff's Phone</u>

Plaintiff further asserts that the seizure and search of his cellphone without a warrant violated the Fourth Amendment.  (FAC at 6.)  Defendants assert that Deputy Dorta's warrantless seizure of Plaintiff's cellphone was proper because the phone was the instrument of a crime and in plain view (Defs.' Mot. Br. at 10) and the seizure was incident to Plaintiff's arrest (<u>see</u> <u>id.</u> at 10-11, 14).  Defendants contend that they did not search Plaintiff's phone until weeks later, after they had obtained a warrant.  (<u>See</u> <u>id.</u> at 14.)

The Fourth Amendment's protections encompass searches and seizures of property.  <u>See</u> <u>Payton v. New York</u>, 445 U.S. 573, 585, 100 S. Ct. 1371, 1379, 63 L. Ed. 2d 639 (1980) ("The simple language of the Amendment applies equally to seizures of persons and to seizures of property.").  The Court further notes, although neither party does, that the seizure and search of Plaintiff's cellphone are assessed under the heightened protection afforded First Amendment materials.  <u>See</u> <u>Zurcher v.</u>

19

Stanford Daily, 436 U.S. 547, 564, 98 S. Ct. 1970, 1981, 56 L. Ed. 2d 525 (1978) (noting "the requirements of the Fourth Amendment must be applied with scrupulous exactitude" when materials seized may be protected by First Amendment (internal quotation marks omitted)).

      1.   *The Seizure of Plaintiff's Cellphone Was Lawful*

Deputy Dorta's seizure of Plaintiff's cellphone was lawful. A law enforcement officer may seize evidence without a warrant pursuant to the plain-view exception to the Fourth Amendment if (1) the initial intrusion is lawful and (2) the incriminatory nature of the evidence is immediately apparent to the officer. United States v. Garcia, 205 F.3d 1182, 1187 (9th Cir. 2000). That is, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 2136-37, 124 L. Ed. 2d 334 (1993). At the time of the seizure Deputy Dorta had probable cause to believe Plaintiff was committing a misdemeanor, and the suspected crime was both ongoing and accomplished by use of an item held in plain view in his outstretched hand. Her confiscation of Plaintiff's cellphone was, therefore, justified under the plain-view doctrine. See United States v. Minor, 756 F.2d 731, 737 (9th Cir.) (noting that plain-view doctrine applies to seizure of First Amendment materials other than those alleged to be obscene), vacated on other grounds, 474 U.S. 991, 106 S. Ct. 401, 88 L. Ed. 2d 353 (1985); United States v. Gilman, 684 F.2d 616, 619 (9th Cir. 1982) (applying plain-view doctrine to

1   seizure of magazines).

2           *2.   Defendants Are Entitled to Qualified Immunity For*

3               *Any Warrantless Search of Plaintiff's Cellphone*

4        Issues of material fact and credibility preclude the Court's

5   determination here of whether Defendants searched Plaintiff's

6   cellphone before obtaining a warrant.  (See Nov. 22, 2013 Rouzan

7   Decl. Ex. D ¶ 5.1 ("While in the county [sheriff's] office I

8   observed defendants Dorta and Boyd searching through my phone.");

9   Boyd Dep. at 66 (testifying, "I don't believe the phone was

10  searched that day" but that deputies might have "navigated

11  through" it and that such a search would be consistent with

12  policy); Defs.' Mot. Br. at 14 ("If [phone was searched],

13  deputies were legally able to examine the cell phone for

14  violations of the statutes.")); see Earp v. Ornoski, 431 F.3d

15  1158, 1170 (9th Cir. 2005) (as amended) ("Summary judgment is an

16  inappropriate vehicle for resolving claims that depend on

17  credibility determinations.").

18       Even if Defendants did search Plaintiff's cellphone at the

19  time of his arrest and even if that was unlawful absent a

20  warrant, see, e.g., United States v. Wurie, 728 F.3d 1, 13 (1st

21  Cir. 2013) (holding that search-incident-to-arrest exception does

22  not authorize warrantless search of cellphone data), cert.

23  granted, 134 S. Ct. 999 (2014); Schlossberg v. Solesbee, 844 F.

24  Supp. 2d 1165, 1170 (D. Or. 2012) (same), Plaintiff still cannot

25  prevail on his Fourth Amendment claim.  Defendants are entitled

26  to qualified immunity because the lawfulness of a cellphone

27  search incident to arrest was not clearly established at the

28  time.

To determine whether a right was clearly established, the Court looks first to Supreme Court and Ninth Circuit law existing at the time of the alleged search.  Cmty. House, 623 F.3d at 967. In the absence of binding precedent, the Court looks to available decisions of other circuits and district courts to ascertain whether the law was clearly established.  Id.  For the law to be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Id. (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)).  Although it is not necessary that the "very action in question" have been held unlawful, its unlawfulness must have been apparent in light of preexisting law.  Id. (quoting Anderson, 483 U.S. at 640).

Because the relevant inquiry is whether a reasonable officer would have believed her acts to be unlawful in light of clearly established law and the information she possessed, see Anderson, 483 U.S. at 641, when federal cases conflict, courts consider state law.  See Hopkins v. Bonvicino, 573 F.3d 752, 776 n.15 (9th Cir. 2009) (noting that given "a close question regarding whether the federal law itself is clearly established, . . . the fact that state law immunizes similar conduct may tend to support an officer's claim of qualified immunity").

Although the Ninth Circuit's holding in United States v. Monclavo-Cruz, 662 F.2d 1285, 1290-91 (9th Cir. 1981) (as amended), precludes a search incident to arrest of items not on the arrestee's person, neither the Supreme Court nor the Ninth Circuit has specifically addressed the propriety of a cellphone

search.[9]  See Anthony v. Oliva, No. ED CV 12-1369-FMO (SH), 2013 WL 1127104, at *7 (C.D. Cal. Jan. 29, 2013); Schlossberg, 844 F. Supp. 2d at 1167.  Moreover, the federal and state courts that have considered the issue have reached differing conclusions. See Wurie, 728 F.3d at 3-6, 13 (summarizing conflicting caselaw and concluding that cellphone search violated Fourth Amendment); Schlossberg, 844 F. Supp. 2d at 1167 & n.2 (same); but see United States v. Finley, 477 F.3d 250, 259-60 (5th Cir. 2007) (holding that because cellphone analogous to closed container, search of arrestee's phone justified).  In particular, the Supreme Court of California has upheld a cellphone search incident to arrest as a valid search of an item "immediately associated with [defendant's] person."  People v. Diaz, 51 Cal. 4th 84, 93, 119 Cal. Rptr. 3d 105, 110 (2011) (internal quotation marks omitted). Accordingly, the law regarding the search of a cellphone incident to arrest was not clearly established in June 2012, nor is it yet.

---

[9]     The question of whether law enforcement may search a cellphone incident to arrest is before the Supreme Court this term in Riley v. California, 134 S. Ct. 999 (2014), and United States v. Wurie, 134 S. Ct. 999 (2014).  In Riley, the California Court of Appeal upheld the admission of evidence from a cellphone search incident to arrest because the phone was "immediately associated" with Riley's "person" when he was arrested.  People v. Riley, No. D059840, 2013 WL 475242, at *6 (Cal. Ct. App. Feb. 8, 2013) (citing People v. Diaz, 51 Cal. 4th 84, 93, 119 Cal. Rptr. 3d 105, 110 (2011)).  In Wurie, the First Circuit held that "the search-incident-to-arrest exception does not authorize the warrantless search of data on a cell phone seized from an arrestee's person," finding no evidence that "such a search is ever necessary to protect arresting officers or preserve destructible evidence."  728 F.3d at 13.  Even if the Supreme Court were to rule that such a search is barred by the Fourth Amendment, its ruling would not affect the unsettled state of the law in June 2012.

1    Because a reasonable officer might have believed that
2    circumstances permitted a warrantless search of Plaintiff's
3    cellphone, Defendants would be entitled to qualified immunity
4    even assuming they did search Plaintiff's phone without a
5    warrant.  See Anderson, 483 U.S. at 641; Rosenbaum, 663 F.3d at
6    1078 ("The linchpin of the qualified immunity analysis is the
7    reasonableness of the officer's conduct in the particular case at
8    hand.").

9    **II.  First Amendment Claim**

10       Plaintiff contends that Defendant Dorta violated his First
11   Amendment rights by seizing his cellphone while he was
12   videotaping court officers in the courthouse hallway.   Dorta
13   contends that she had a right to seize it because he was not
14   permitted to record inside the courthouse without prior
15   permission, and therefore she did not violate Plaintiff's First
16   Amendment rights.  (Defs.' Mot. Br. at 17-19.)

17       In order to demonstrate a First Amendment violation, a
18   plaintiff must provide evidence showing that "by [her] actions
19   [the defendant] deterred or chilled [the plaintiff's] political
20   speech and such deterrence was a substantial or motivating factor
21   in [the defendant's] conduct." Sloman v. Tadlock, 21 F.3d 1462,
22   1469 (9th Cir. 1994).  The First Amendment forbids government
23   officials from retaliating against individuals for "speaking
24   out."  See Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695,
25   1701, 164 L. Ed. 2d 441 (2006); see also Gibson v. United States,
26   781 F.2d 1334, 1338 (9th Cir. 1986).  A plaintiff must show that
27   (1) he engaged in constitutionally protected activity; (2) as a
28   result, he was subjected to adverse action by the defendant that

24

would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.   See Pinard v. Clatskanie Sch. Dist., 467 F.3d 755, 770 (9th Cir. 2006).

As the previously assigned U.S. Magistrate noted, videotaping of police officers carrying out their duties in a public place is an exercise of First Amendment liberties.   See, e.g., ACLU of Ill. v. Alvarez, 679 F.3d 583, 600-01 (7th Cir.) (holding that videotaping police officers engaged in their duties in public place protected by First Amendment), cert. denied, 133 S. Ct. 651 (2012); Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011) (finding First Amendment right to film "government officials engaged in their duties in a public place, including police officers performing their responsibilities"); Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); Adkins v. Limtiaco, 537 F. App'x 721, 722 (9th Cir. 2013) (holding that allegations that police stopped plaintiff from photographing them at car-crash site and, when he asserted right to do so, confiscated his cellphone and incarcerated him stated claim for First Amendment violation); cf. Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a "First Amendment right to film matters of public interest").

Because a county courthouse is a nonpublic forum, however, see Sammartano v. First Judicial Dist. Ct., 303 F.3d 959, 966

(9th Cir. 2002), the county may regulate and restrict speech inside it as long as the regulations (1) are "reasonable in light of the purpose served by the forum" and (2) are "viewpoint neutral." <u>Cornelius v. NAACP Legal Defense & Educ. Fund</u>, 473 U.S. 788, 806, 105 S. Ct. 3439, 3451, 87 L. Ed. 2d 567 (1985); <u>Sammartano</u>, 303 F.3d at 966.  With respect to the first prong, "[t]he [g]overnment's decision to restrict access to a nonpublic forum need only be <u>reasonable</u>; it need not be the most reasonable or the only reasonable limitation." <u>Cornelius</u>, 473 U.S. at 808 (emphasis in original).

Defendant Dorta's enforcement of the courthouse ban on unauthorized recording was reasonable because it helped maintain "established legal procedures in the calmness and solemnity of the courtroom" necessary to "the fair and equal administration of justice" (Cal. R. Ct. 1.150) and because the courthouse is not a public forum for the expression of ideas.  Although the cases analyzing whether regulations upon speech in a courthouse violate the First Amendment generally focus only on the courtroom itself, the law is clear that there is no constitutional right to record even judicial proceedings – which are generally of more import to the public at large than the goings-on in the courthouse hallway. <u>See, e.g.</u>, <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 609-10, 98 S. Ct. 1306, 1318, 55 L. Ed. 2d 570 (1978) (holding that media have no constitutional right to photograph or otherwise electronically record open judicial proceedings despite having right to attend and report on them); <u>Chandler v. Florida</u>, 449 U.S. 560, 569, 101 S. Ct. 802, 807, 66 L. Ed. 2d 740 (1981).

1    Moreover, it is clear that the courthouse itself – and not
2    just the courtrooms or other sites of judicial proceedings – is a
3    nonpublic forum and that justifications for restricting speech
4    there do not depend on whether that speech takes place inside the
5    courtroom.  See, e.g., Sammartano, 303 F.3d at 966 (holding that
6    judicial and municipal complexes are nonpublic forums); Sefick v.
7    Gardner, 164 F.3d 370, 372 (7th Cir. 1998) (holding that "[t]he
8    lobby of the [federal] courthouse is not a traditional public
9    forum or a designated public forum, not a place open to the
10   public for the presentation of views" and thus "[n]o one can hold
11   a political rally in the lobby of a federal courthouse");
12   Huminski v. Corsones, 396 F.3d 53, 91 (2d Cir. 2004) (finding
13   purposes of courthouse "incompatible with expressive activities
14   inside a courthouse").

15       Further, the restriction on recording was viewpoint neutral.
16   Neither Rule 1.150 nor the court's cellphone policy restricted
17   speech based on content; rather, the rule restricted recording of
18   all court proceedings and the policy all recording within the
19   nonpublic forum of the courthouse.  (See Rule 1.150(b)(3) & (c);
20   Defs.' Mot. Br. Ex. B.)  Because Defendant Dorta's restriction of
21   Plaintiff's recording was based on the simple fact that Plaintiff
22   was recording in the courthouse, not what he was recording, the
23   restriction was viewpoint neutral and satisfies the second prong
24   of Cornelius.

25       As a matter of law, Plaintiff has not stated a cognizable
26   violation of the First Amendment based on Deputy Dorta's
27   restriction of his recording in the courthouse.

28

27

**RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Judge issue an Order (1) approving and accepting this Report and Recommendation; (2) denying Plaintiff's summary judgment motion; (3) granting Defendants' summary judgment motion; and (4) entering judgment for Defendants.


DATED: March 12, 2014

JEAN ROSENBLUTH
U.S. Magistrate Judge

28